# Hone et al. v. Kentucky Home Mut. Life Ins. Co.

March 27, 1942.

David R. Castleman and David R. Castleman, Jr., for appellants.

L. H. Hilton and Woodward, Dawson & Hobson for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On May 16, 1911, the Citizens National Life Insurance Company issued and delivered to Augustus C. Hone a life insurance policy for the sum of $20,000 payable in twenty equal annual installments of $1,000 each, the first installment to be paid immediately upon due proof of the death of the insured. Alice C. Hone, wife of the insured, and his children by her were named beneficiaries in the policy.

In February, 1915, the Inter-Southern Life Insurance Company consolidated with the Citizens National Life Insurance Company under the corporate name of Inter-Southern Life Insurance Company and assumed and agreed to perform the obligations of the Citizens National Life Insurance Company including the policy on the life of Hone, and issued and delivered to Hone its certificate of contract and attached same to his policy. In 1932 the Inter-Southern Life Insurance Company (hereinafter called the Inter-Southern) became insolvent and was placed in the hands of A. B. Chandler and the Fidelity and Columbia Trust Company as receivers. The Kentucky Home Life Insurance Company was organized and took over the assets of the Inter-Southern and assumed its liabilities, with certain modifications and conditions, under a reinsurance agreement.

The insured (hereinafter referred to as Hone) died September 17, 1939, and soon after his death the appellants, as beneficiaries of the policy, demanded payment or some sort of settlement of the same and upon the Kentucky Home Mutual Life Insurance Company's refusal to recognize any liability under the policy, the appellants, as plaintiffs below, brought this action in the Jefferson circuit court against the Kentucky Home Life to recover on the policy. The Kentucky Home Life (hereinafter called appellee) defended on the ground that the policy had lapsed because of Hone's failure to pay the premium due thereon on the 16th day of May, 1932, or within a thirty day period of grace thereafter. Issues joined upon the question of whether the policy had

lapsed. The facts are stipulated by the parties and consist of many documents which include the policy contract, the reinsurance agreement pursuant to which the appellee assumed the obligations of the Inter-Southern, and certain correspondence between Hone and the receivers of the Inter-Southern and the representatives of the appellee after it had taken over the assets of the insolvent Inter-Southern and had assumed its liabilities under the reinsurance agreement. Upon the documentary evidence the chancellor held and adjudged that Hone's policy had lapsed because of his failure to pay the premium due May 16, 1932, and dismissed appellants' petition. This appeal follows.

The appellants pleaded in their answer, and earnestly insist in their brief, that because of the conduct of the receiver of the Inter-Southern and the representatives of appellee after the consummation of the reinsurance agreement, the latter is now estopped to plead or assert as a defense that Hone suffered his policy to lapse.

For the purpose of a decision of this case it becomes unnecessary for us to enter into a detailed discussion of all the questions raised in briefs of respective counsel. A statement of the fundamental facts upon which the case must be determined, is sufficient.

On April 8, 1932, receivership proceedings were instituted in the Franklin circuit court against the Inter-Southern by the Insurance Department of Kentucky and on that date the court entered an order restraining and enjoining the Inter-Southern in whole from doing any further business as an insurance company in any manner or form until further orders of the court. On April 16, 1932, an order was entered appointing A. B. Chandler and the Fidelity and Columbia Trust Company joint temporary receivers for the Inter-Southern. In this order it was provided that the receivers shall be and they are authorized to receive and receipt for all moneys due the Inter-Southern or which may be due while acting as such temporary receivers, and that the receivers shall keep an account of all moneys collected or received by them, and all moneys received or collected for premiums on insurance policies shall be deposited and kept in a separate account and none of the said premium fund shall be paid out or distributed except upon approval and direction of the court. The order also enjoined and restrained the Inter-Southern and its officers, agents

and employees from paying any policy contract obligation, and from conducting any business as an insurance company, or from interfering with the possession, control or duties of the temporary receivers. On April 28 and May 27, 1932, similar orders were entered prohibiting the payment of cash surrender values and the payment of all other policy obligations of the Inter-Southern. On May 27, 1932, the Inter-Southern was adjudicated insolvent and permanent receivers were appointed by the court to take charge of its affairs.

It appears that Hone, who then resided in New York, received information through the press that receivers had been appointed for the Inter-Southern, and on April 27, 1932, he wrote a letter to the Inter-Southern asking for information concerning the same. On May 6 the receivers responded to Hone's letter and advised him that a premium on his policy would be due May 16, 1932, and suggested that he make payment as usual. On May 14, 1932, Hone responded to that letter acknowledging receipt of same, and further stated that his income had been reduced and for that reason he did not feel able to pay any premium and mentioned the fact that the loan value of his policy was more than $5,000 and assumed the cash surrender value to be the same, and in conclusion he elected, in accordance with the provisions of the contract, to take the cash surrender value of his policy and requested check to cover the same. This was in accordance with an option in the contract, which provided that at the end of the third year the insured may receive the cash value of the policy.

On August 8 final judgment was entered in the Inter-Southern receivership case, wherein the reinsurance agreement was approved by the court. Clause 4 of the reinsurance agreement provides as follows:

"All policies reinsured hereunder which are in force at the effective date of this agreement as extended insurance for a specified period, shall be treated as follows: The date of expiry of such extended insurance shall be changed so that the reserve therefor at the effective date of this agreement shall be forty per cent (40%) of the reserve at said date for the then unexpired portion of the original period of extension. Such extended insurance shall be for an amount equal to the death benefit in force at the effective date of this agreement. * * *"

The reinsurance agreement further provided, however, that the above clause was not applicable to death claims which would be paid in full in accordance with the contract with the Inter-Southern. The gross reserve under the policy as of August 8, 1932, for the then unexpired portion of the original period of extended insurance amounted to $4,641.72. Applying 40% of this reserve, or $1,856.69, to the portion of extended insurance was sufficient to purchase extended insurance in the sum of $14,800.

It is the contention of appellants that they were given the right to commute the installment payments and receive commuted value of the policy; namely, $14,800, and that there is now due them from appellee the sum of $14,800 with interest thereon from September 17, 1939, the date of Hone's death, subject to a credit as of that date amounting to $3,376.56 to cover payment of deferred premiums and interest, leaving a net amount due them of $11,423.44 with interest from September 17, 1939, until paid. Other correspondence between the parties was had to which we need not refer in detail, since it is sufficient to say that it was of such nature as to induce Hone to believe that his rights would be protected by the receivers and appellee after the latter took over the business of the Inter-Southern pursuant to the reinsurance agreement of August 8, 1932.

On August 4, 1932, however, just previous to the consummation of the reinsurance agreement, the receivers for the Inter-Southern wrote Hone a letter in which they advised him that his policy had lapsed for nonpayment of the annual premium due May 16. It was further stated in that letter:

> "We do not believe it is your desire to have the policy remain in this condition and particularly is this true since you have carried it for a number of years. If it is not convenient for you to make payment at this time, or if you do not care to do so, we will, upon approval of your application for reinstatement accept the enclosed premium lien note signed for $364.64, payable November 16 after date."

On August 6 Hone responded to the above letter, in which he protested that his policy had lapsed and stated that if the receivers' records showed such condition he would expect them to at once make corrections. He con-

tended that his policy had not lapsed, since he had elected to take the cash surrender value as of May 14, 1932, and again demanded a check for the cash surrender value. On August 13, 1932, the receivers responded to Hone's letter and advised him, in substance, that if he insisted upon surrendering his policy, as soon as the Kentucky Home Life (appellee) was functioning there would be proper forms forwarded to him for that purpose but not to be paid in full or any part thereof for three years. This was in accordance with the reinsurance agreement.

On September 28, 1932, Hone responded to the letter last mentioned above, in which he said in part:

"On the basis of your letter I have no choice but to continue my policy in force, even though I very much need the cash surrender value at present. I have therefore decided to pay this premium out of the loan value, so please send me the necessary papers to sign."

On September 30, 1932, appellee, which was then functioning, wrote Hone that if he decided to surrender his policy it would be necessary for him to complete the application which was enclosed and return it to appellee with the policy for surrender, and that there would then be issued to him a certificate to be held during the three-year moratorium period, and upon surrender of that certificate to the company on or after August 8, 1935, he would be paid the net surrender value together with interest. It appears, however, that this letter was written before Hone's letter of September 28, 1932, was called to the attention of the writer of the letter of September 30 and after response to Hone's letter of September 28, in which he stated that he had decided to pay the premium out of the loan value of the policy. Appellee responded to that letter October 10, 1932, and enclosed a policy loan application and an application for reinstatement of the policy. Hone was advised to take the application for reinstatement to Dr. C. T. Sharp and undergo a medical examination, which he did, and the report of the doctor was favorable, that is, he found Hone in a satisfactory physical condition for insurance. On October 25, 1932, Hone returned the application for reinstatement and the application for the loan sufficient to satisfy the premium due May 16 but still insisted that in fact his policy had not lapsed for failure to pay the premium due May 16,

1932, since he had elected to accept cash surrender value. Other correspondence followed which was rather of an argumentative nature and finally, on December 14, appellee wrote Hone this letter:

"We regret to advise you that the Underwriting Committee of the Company has declined your Application for Reinstatement of your above numbered policy which lapsed for non-payment of premium due May 16th, 1932.

"We are returning herewith your policy, together with Loan Agreement given in settlement of the premium marked 'Void.'

"Your policy is now on Extended Insurance in accordance with the non-forfeiture provision and in accordance with the terms of the reinsurance agreement between the Receivers of the Inter-Southern Life Insurance Company and the Kentucky Home Life Insurance Company."

The reserve under the policy as of August 8, 1932, was sufficient to extend the policy 5 years and 162 days, or until January 17, 1938, which was one year and eight months previous to Hone's death. Hone never responded to the letter of December 14, nor did he tender or offer to pay any further premiums on the policy or take any further action whatsoever. So far as the record discloses he surrendered to his fate and accepted extended insurance as provided in the policy and as stated in the letter of December 14.

It is the argument for appellants that (a) Hone's policy had not lapsed because of failure to pay the premium due thereon May 16, 1932, since he had exercised his option under the contract to take the cash surrender value; and (b) he had the right to exercise a second option; namely, to have his policy reinstated by paying the past due premium and that appellee had no right to impose upon him the restriction of re-examination, notwithstanding that provision in the policy which provided that reinstatement of a policy may be rejected for or without cause, since those conditions are applicable only to lapsed policies.

Conceding, without deciding the question, that the remedies or rights contended for were available to Hone had he sought to enforce them after the letter of Decem-

ber 14, but since by his acquiescence and conduct he accepted extended insurance as a settlement of the controversy between him and appellee, it is now too late to reopen the question. Appellants as beneficiaries of the policy have no more rights than Hone would have had had he yet been living and had now attempted to enforce a renewal of the policy or a cash surrender settlement. In such circumstances it is obvious that he could not at this late day assert any rights under the policy.

Judgment affirmed; whole court sitting.